Follett, J.
This action was brought to recover (pursuant to sections 1667 and 1668 of the Code of Civil Procedure}, treble damages for cutting and carrying away, in December, 1886, trees from a tract of land containing 41.60 acres, to which Daniel Ogsbury acquired title January 24, 1826. Upon the trial the defendant conceded that in December, 1856, he cut and carried away from said land, trees of the value of thirty dollars.
The plaintiff waived her claim for treble damages, and • the court directed a verdict for thirty dollars, the actual damages.
This action was defended upon two grounds:
First. That eighteen or twenty years ago, Daniel Ogsbury (defendant’s father), by a valid oral gift, gave said premises to said defendant, since which time he had been in possession and made improvements.
Second. That said land was devised to him by his father in the fifth clause of the will.
*56 September 12, 1886, Daniel Ogsbury died, leaving a last will and testament, executed April 19, 1886, and probated October 1, 1886, and letters were duly issued thereon to this plaintiff. The fifth subdivision of said will, under which the defendant claims title, is as follows:
“ Fifth—I give and devise to my son,. John D. L. Ogsbury, for and during his natural life, and to his heirs-at-law after his decease, the following described piece or parcel of land, viz.: All that piece of land that he has a quitclaim deed of from me, and that he now occupies; also a strip of land five chains wide lying on the marsh in the swamp, adjacent to and bordering on the south Penet line, or lying on the north side of swamp and marsh land owned by me, running from the center of Perch river "at low-water mark easterly along said Penet line as far as my swamp or marsh land runs in that direction. This piece of land is to be five chains, or twenty rods wide, parallel with said Penet fine the whole distance above described.”
The evidence was entirely insufficient to sustain a find-. ing that Daniel Ogsbury, eighteen or twenty years before his death, or at any time before his death, gave the premises to the defendant. The evidence upon this question is sufficiently referred to, and its bearings and effect are very clearly stated by the learned trial judge at the close of the case. A fact which seems to this court to possess great probative force, if it be not conclusive, is that August 30, 1880, long after the pretended gift of this tract of land, the father executed to the defendant a deed of gift, or advancement, of forty acres adjoining this, which defendant now claims as a gift. It is difficult to see why this tract was not included in that deed if it had long before been given; but, instead, a right of way was reserved in favor of the grantor, two rods wide, across the southeast side of- the1 land conveyed, which is along the southwest line of Zimmerman’s 124 and 35-100 acres, to the lands in the rear; which are the same lands that defendant claims were given him by the grantor long prior to the date of the deed.
So far as it appears, this 41 and 60-100 acres was never surveyed, marked by bounds or fences, or in any manner seperated from the remainder of the testator’s farm until December 28. 1886, when his executrix had it surveyed for the purpose of selling to Mr. Stephens. Had this question been submitted to the jury, and had the jury found that the father gave the land .to his sonin his life-time, the court would have been required to set aside the verdict, as contrary to the evidence. “ If the proof (evidence), of a fact is so preponderating that a verdict against it would be set aside by the court, as contrary to the evidence, then it is the duty of the court to direct a verdict..” Dwight v. Germania Life Ins. Co., 103 N. Y., 341, 358; 3 N. Y. State Rep., 115. A verdict *57 founded solely on oral evidence that a decedent in his lifetime, gave away a part of his real estate to which he held the legal title, and of which he apparently died possessed, will not be sustained unless the evidence of the gift is clear and satisfactory.
The defendant claims that three pieces of land are described and devised to him in the fifth clause of his father’s will to wit: (1) The forty acres conveyed by his father to him by the quit-claim deed of August 30, 1880. (2) The 41 and 60-100 acres in dispute. (3) The strip twenty rods wide, to be laid off adjacent to the south Penet line; while the plaintiff claims that only two pieces of land are described and devised therein. To support his claim, the defendant contends that the words “ all that piece of land that he has a quit-claim deed of from me, and that he now occupies,” described and devised the first and second pieces above mentioned. It should be borne in mind, that when this will was executed (April 19, 1886), the land in dispute_ had not been surveyed, nor had its contents been ascertained; and that part of what is now called the southerly line, denoted on the map by the dotted line 19 chains and 50 links, had not been marked on the ground; and the piece in dispute, and that lying south, was wood land, extending as far southerly as the easterly line of the piece denoted on the map by “ Zimmerman’s 30 a,” was unfenced and used in common.
It is urged that it was senseless for the testator to insert words describing and devising the first piece of land, which he had previously conveyed. That may be; but, neverthe- ■ less, the words do clearly refer to the first piece, and there are no words in the sentence which are not descriptive of the first piece. It is recited in the deed that it was executed as “ a part of the share of the said John D. L. Ogsbury to his father’s estate,” and perhaps it may have been thought by the testator, or the draughtsman of his will, that the deed required confirmation. However that may be, all the words used are clearly applicable to the first piece, and inapplicable to any other piece of land. The first sentence of the subdivision under consideration devises “ the following described piece or parcel of land, viz.: ” one piece, not two, or three pieces, then confers the quit-claim deed and describes and devises one piece, to be laid off twenty rods wide. The testator, or his draughtsman, understood the necessity of describing the subject of his devises, as is shown by the apt words used in describing the piece to be laid off twenty rods wide; and ,if the testator had intended to devise to the defendant the land in dispute, it would have been easy, by extending westerly to the lands of Roof, the northerly line of the land quit-claimed, to have clearly described and devised it. We think the learned trial judge correctly construed the subdivision under consideration, and that the judgment must be affirmed with costs.
Hardin, P. J., and Martin, J., concur.